THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DENNIS VON HATTEN, Defendant-Appellant.

Fourth District   Nos. 13907-13909 cons.

Opinion filed September 12, 1977.

MILLS, J., concurring in part and dissenting in part.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Thomas W. Gendry, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

Defendant appeals convictions for burglary, possession of controlled substances and possession of cannabis, arguing as error that the trial court failed to suppress certain evidence obtained by a number of separate searches. After a lengthy suppression hearing, defendant was found guilty by the court and sentenced on each count to concurrent terms of imprisonment. Because of the number of searches involved, it is necessary to set forth the facts in some detail.

The searches at issue grew out of the arrest of defendant and a female companion at the Elwin Motel, south of Decatur. Macon County sheriff's deputies had responded to a complaint made by the daughter of the motel owners. There is some indication in the record that at this point, the men answering the complaint, Lt. Lichtenberger and Deputy Rice, were aware that drugs were present in unit #2 of the motel, rented to the defendant. Rice testified that the complainant and her sister, the acting motel manager, informed Lichtenberger and himself that drugs were present before the motel room was entered.

Lichtenberger and Rice heard no noise from unit #2 and saw no lights in it. Lt. Lichtenberger opened the screen door to the unit and knocked on

the wooden door which was ajar. Defendant's female companion answered the knock and at Lichtenberger's request called defendant to the door. As defendant approached the door, he fell. Lichtenberger and Rice then entered the room to assist him even though their entry without a warrant was objected to by the female companion. Both defendant and his companion were placed under arrest for disorderly conduct and, as defendant was being helped to his feet, he lunged for a knife on the vanity. Defendant was quickly subdued and both he and the woman were restrained and led from the room. Before, during and immediately following the arrests, the officers searched the room with their flashlights and discovered what appeared to be contraband in plain view on the dresser, vanity and bed. Deputy Rice admitted during cross-examination that he was looking for drugs prior to defendant's actual arrest.

Following the removal of defendant from the premises, the flashlight search was completed and the motel unit was locked. Lt. Lichtenberger then called for evidence experts. Upon their arrival, the unit was unlocked by the acting motel manager and a thorough search was made. Several types of controlled substances were discovered in addition to marijuana, hypodermic needles and a sack and tin can full of torn papers. All such evidence in addition to all possessions of defendant and his female companion were removed from the room. The search revealing this contraband was not limited to areas in plain view; clothing was examined and hidden recesses in the room were searched.

After this second search of the defendant's motel room, Lt. Lichtenberger examined defendant's car in the motel parking lot and noted electrical equipment in the back seat. Even though defendant had paid for his room until the following afternoon and his room lease carried with it parking privileges, Lt. Lichtenberger ordered a tow truck to remove the car to the Macon County building. Lt. Lichtenberger admitted that his sole motive in ordering the removal of the car was to comply with the wishes of the acting motel manager.

Upon the return of the officers to the county building they began to investigate the torn papers found in the motel room. A Decatur policeman who happened to be in the sheriff's office noticed the name of Gerald Tate on one of the papers and later alerted sheriff's officers that Tate had been the victim of a recent burglary. Before this information was known, defendant's car had been subjected to an inventory search. Deputy Stevens, who conducted the search, testified that he saw a marijuana cigarette on the floor of the car when looking through the window. His search revealed only the presence of stereo equipment and a television in the car. After learning that Tate's home had been burglarized, the inventory from the car and a list of items taken from Tate were compared and it was discovered that defendant had some of the stolen material in

the car. A second search of the car was then made and the items found therein were seized.

Before trial, defendant sought to suppress the material seized from the motel room and the fruits of the search of his car. The trial court denied defendant's motion and the case proceeded to trial where defendant stipulated that the witnesses who testified at the suppression hearing would testify the same at the trial. Defendant was found guilty. We must reverse and remand for a new trial.

■■■ In order to make an arrest it is necessary only that an officer have probable cause to do so. (Ill. Rev. Stat. 1975, ch. 38, par. 107—2(c); *People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537.) Until recently, it was beyond doubt that an officer did not need a warrant to enter a private home to make an arrest if there was probable cause for that arrest. (*People v. Ortiz* (1975), 35 Ill. App. 3d 283, 340 N.E.2d 714.) Recently, however, the Third District Appellate Court has called that doctrine into question. (See *People v. Wolgemuth* (1976), 43 Ill. App. 3d 335, 356 N.E.2d 1139, *appeal allowed*, 65 Ill. 2d 584; see also *People v. Polito* (1976), 42 Ill. App. 3d 372, 355 N.E.2d 725.) Had it not been for defendant's resisting arrest we would be troubled by the entry used by the officers here. That action by the defendant, however, establishes independent probable cause which validates the arrest.

■■ The flashlight search of the motel room was legal as a search incident to a valid arrest. (*Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.) The rationale for the exception provided by *Chimel* is supported by the actual danger encountered by the officers here. The search made at the time of the arrest disclosed various pills, and what appeared to be marijuana, spread throughout the room in plain view. Nothing, however, was seized.

■■ We cannot say that the subsequent search of the motel room can be justified as a search incident to a lawful arrest. Defendant had been removed from the motel room and time had passed since the defendant's arrest. (See *People v. Kalpak* (1957), 10 Ill. 2d 411, 140 N.E.2d 726.) The officers had ample time to secure a warrant in this interval. (*United States v. Chadwick* (1977), ___ U.S. ___, 53 L. Ed. 2d 538, 97 S. Ct. 2476.) The State argues that the search was permissible under the plain view doctrine in that the officers noted the evidence on their first entry and could therefore return to seize it. It is, however, axiomatic that plain view cannot support a warrantless search and seizure even where law enforcement officers have had a prior legal view of the evidence seized. (*People v. Eastin* (1972), 8 Ill. App. 3d 512, 289 N.E.2d 673; *People v. Abrams* (1971), 48 Ill. 2d 446, 271 N.E.2d 37; *People v. Clark Memorial Home* (1969), 114 Ill. App. 2d 249, 252 N.E.2d 546.) Irrespective of the legality of the first entry and search incident to arrest, evidence seized in a

second search of the same premises without a warrant must be suppressed. This second search violated defendant's rights under the fourth amendment to the United States Constitution.

■■ With regard to the two searches of defendant's automobile it must first be noted that the officers had no right to remove the automobile from its parking space at the motel. Defendant had every right to maintain his car where it was legally parked. We are able to find no exigent circumstances which would support the seizure of defendant's car here. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.) Under this analysis, any subsequent inventory custodial search must then be voided. Law enforcement officers have a right or duty to make such a search only when they have some responsibility for the car or its contents. (See *People v. Clark* (1976), 65 Ill. 2d 169, 357 N.E.2d 798, *cert. denied,* ___ U.S. ___, 53 L. Ed. 2d 229, 97 S. Ct. 2184.) There was no such responsibility here.

■■■ Nor can this inventory search of the defendant's automobile be justified by the doctrine of plain view. Officer Stevens testified that he saw marijuana on the floor of the car when he looked into the window. However, the central fact is that Officer Stevens had no right to be looking into the car once it was removed from its lawful place. Under the reasoning of *Eastin,* plain view cannot be used to justify a search when the officer had no right to be in a position to have a plain view.

The second search of defendant's car produced the actual evidence sought to be suppressed in the burglary conviction. That evidence was the product of, first, the unlawful search of the defendant's motel room and, second, the unlawful inventory search of defendant's car. The second search was made a short time after the searches of the motel room and the car. (*Cf. Johnson v. Louisiana* (1972), 406 U.S. 356, 32 L. Ed. 2d 152, 92 S. Ct. 1620; *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.) There was no independent origin for this search; the search would not have been made but for the illegal seizure of the papers from the motel and the illegal inventory search of the car which put the Macon County sheriff's officers on notice that defendant had possession of property identical to that stolen from Tate. This evidence, then, should have been suppressed as the fruit of two poisonous trees. *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.

It was error for the trial court to refuse to suppress the evidence seized in the second search of the motel room and the property seized from defendant's car. The defendant was entitled to have the motion to suppress allowed as indicated. Thus there must be a new trial.

Reversed and remanded.

REARDON, J., concurs.

Mr. JUSTICE MILLS, dissenting in part and concurring in part:

As is the way of all flesh, my brothers are partly wrong, partly right. The initial search was valid. I dissent.

The subsequent auto impoundment and search were improper. I concur.

The majority says the "flashlight search" of the motel room was valid and I agree. But—they go on to say—there was a second, subsequent search that was not incident to the lawful arrest since "time had passed." With this I most decidedly disagree. The law officers discovered contraband in plain view, identified it as such, locked and secured the premises, and then awaited the arrival of evidence specialists within their own law enforcement agency to expertly handle the inventory of the prohibited materials. To my view, this was no more than a continuation of the same legal search. It was not a broken-off, second or subsequent search—merely a delayed portion of the same search, or a single search in two segments, if you will. And whatever contraband that was initially eyeballed in plain view by the arresting officers (and later inventoried by their evidence expert colleagues) was certainly admissible in evidence.

Since I agree with the other members of the panel as to the impropriety of the auto search, upon the remandment of this case I would permit into evidence the limited fruits of the plain view identification in the motel room.