THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANIEL P. SANDERS, Defendant-Appellant.

Third District   No. 77-139

Opinion filed April 17, 1978.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong and John X. Breslin, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by Daniel P. Sanders, the defendant, from a judgment of the circuit court of Peoria County which found him guilty of the offense of obstructing justice and from a sentence imposed thereon to a term of not less than one nor more than three years in the penitentiary.

The defendant, his wife, and his wife's brother, Carl Chambers, on June 9, 1976, at approximately 10:15 p.m., returned to their apartment in the city of Peoria. An upstairs neighbor, Verlin Vire, saw Chambers enter the apartment and notified the Peoria Police Department. Vire had been the victim of a burglary in which a television set and checkbook were taken. Chambers was the prime suspect as to this offense. Shortly after being notified as to Chambers' whereabouts three policemen appeared at the defendant's apartment. The officers did not have either a search warrant or an arrest warrant. What transpired can best be described by setting forth a portion of the testimony of Officer Poynter which was adduced on cross-examination during a hearing on a motion to suppress evidence. That testimony is as follows:

"Q. You knocked on the door and then is it true that Mr. Sanders came to answer the door?

A. Yes, sir.

Q. And when he answered the door, you more or less just came right in, isn't that right?

A. I stepped inside the apartment.

Q. You weren't asked to come in were you?

A. No.

Q. You just assumed that you could come in, is that correct?

A. As I normally do when I am talking to someone.

Q. You come into their place even though you are uninvited?

A. Step into the apartment, yes.

Q. Now, did the other two officers step in?

A. Yes, sir, they did.

Q. And they weren't invited were they?

A. They were with me.

Q. But they weren't invited to come in?

A. Not that I can recall.

Q. Mr. Sanders didn't say to you, come on in, have a chair, or words to that effect did he?

A. Not that I can recall sir."

From the record it is disclosed that the defendant either refused to reply when asked if Chambers was present or stated that he had been there but had left earlier. He was then handcuffed and informed that he was being arrested for obstructing justice. One of the officers noticed the defendant's wife in the apartment's bedroom and heard her whispering to someone. The officer ordered the defendant's wife to get away from a closet door. It was then discovered that Chambers was hiding in the closet door. Upon being commanded to do so Chambers exited the closet and was placed under arrest.

The evidence is conflicting as to whether the defendant was informed as to why Chambers was being sought. The record does support a finding that the defendant denied an officer's request to conduct a search of the apartment.

The defendant was charged by complaint with the offense of obstructing justice and concealing a fugitive. Following a preliminary hearing both of these charges were dismissed on the basis of no probable cause being found. Thereafter the defendant was indicted for these same offenses. A pretrial motion to suppress evidence was denied and as we have previously stated, the defendant following a bench trial was found guilty of the offense of obstructing justice.

The paramount issue presented for determination in this appeal is whether the trial court erred in denying the defendant's motion to suppress evidence when the police officers entered his home without either a search warrant or an arrest warrant.

In addressing ourselves to this issue we first direct our attention to our Federal and State constitutions. The fourth amendment to the United States Constitution provides as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Illinois Constitution contains similar language:

"The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of

communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, §6.

An examination of both of the constitutional provisions can only result in arriving at the conclusion that the prohibition against unreasonable searches and seizures applies to seizures of the person as well as seizures of property. (See *People v. Wolgemuth* (1976), 43 Ill. App. 3d 335, 356 N.E.2d 1139.) We are aware of the fact that this court's decision in the case of *Wolgemuth* has been reversed by our supreme court but on the grounds that in said case there was not a warrantless search. See *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067.

■■ Both the Federal and State constitutions require, whether persons or things are to be seized, a warrant must issue describing the place to be searched; however, our reviewing courts have modified this requirement where a delay would frustrate or defeat the purpose of the search. This modification has resulted in the evolution of the exigent or exceptional circumstances doctrine. See *United States v. Jeffers*, 342 U.S. 48, 96 L. Ed. 59, 72 S. Ct. 93; *McDonald v. United States*, 335 U.S. 451, 93 L. Ed. 153, 69 S. Ct. 191; *Johnson v. United States*, 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367.

■■ In *Dorman v. United States* (D.C. Cir. 1970), 435 F.2d 385, the reviewing court held that the fourth amendment to our Federal Constitution requires scrutiny by a judicial officer before the police may enter a dwelling to effect an arrest unless exigent circumstances do not tolerate a delay and consequently a warrantless entry into a dwelling is justified. The case of *Dorman* set forth various factors to be considered in determining whether "exigent circumstances" are present. Included among those factors are the following: (1) whether a grave offense is involved, particularly one that is a crime of violence, (2) the suspect is reasonably believed to be armed, (3) there exists not merely the minimum of probable cause that is required when a warrant has been issued but beyond that a clear showing of probable cause including "reasonably trustworthy information" to believe the suspect committed the crime involved; (4) strong reason exists to believe that the suspect is in the premises being entered; (5) there is likelihood the suspect will escape if not swiftly apprehended; (6) whether the entry is forceable or peaceful; and (7) the time of entry (day or night).

Although the United States Supreme Court has never adopted or approved the rule announced in *Dorman* several Federal courts have acknowledged that such warrantless entries may be unconstitutional. See *Salvador v. United States* (8th Cir. 1974), 505 F.2d 1348; *United States v.*

*Phillips* (9th Cir. 1974), 497 F.2d 1131; *United States v. Shye* (6th Cir. 1974), 492 F.2d 886; *Vance v. North Carolina* (4th Cir. 1970), 432 F.2d 984.

■■ Applying the *Dorman* standards to the instant appeal we conclude that the circumstances did not justify a warrantless entry. The suspect Chambers was not involved in a grave offense of violence. There was no reason to believe that he was armed and it is difficult to conclude that he would have escaped during the delay occasioned by the procurement of a warrant. The record reflects that he had been in the same building as the victim of his burglary for a period of some three weeks after he committed the offense. The entry into the defendant's apartment was made during the night time.

We are aware of this court's opinion in *People v. Denwiddie* (1977), 50 Ill. App. 3d 184, 365 N.E.2d 978. The case of *Denwiddie*, however, is clearly distinguishable from the instant case when the *Dorman* standards are applied. In *Denwiddie* there was more than "minimum" probable cause for defendant's arrest and the entry itself was secured in the daytime within two hours of the defendant's commission of the crime of armed robbery.

During oral argument of this appeal the recent case of *People v. Addison* (1977), 56 Ill. App. 3d 92, 371 N.E.2d 1025, was mentioned. The case of *Addison* is also clearly distinguishable from the case now before us. In *Addison* the crime of the suspect was of a grave and violent nature. The suspect was known to be armed and the entry was effected during daylight hours after what could be determined a "hot pursuit" of the suspect by police officers.

We are also aware of the recent case of *People v. Abney* (1978), 58 Ill. App. 3d 54, 373 N.E.2d 861. In the case of *Abney* the defendant was charged with the offense of aggravated battery. Prior to trial a motion to suppress certain evidence was made by the defendant since said evidence was found in his home when police officers entered the same without a search warrant or arrest warrant. The reviewing court in *Abney* concluded that mere probable cause to arrest is insufficient to justify a warrantless entry into a home for the purpose of making an arrest. The court further applied the *Dorman* (*Dorman v. United States* (D.C. Cir. 1970), 435 F.2d 385) standards in determining whether exigent circumstances were shown to justify the warrantless arrest and concluded that even though the offense with which the defendant was charged was a violent one, there nevertheless were not enough circumstances present other than probable cause to justify the arrest. The reviewing court in *Abney* affirmed the order of the trial court suppressing the evidence. (See *People v. Abney* (1978), 58 Ill. App. 3d 54, 373 N.E.2d 861.) Without making a detailed comparison of the facts in *Abney* with the facts in the

instant case, it is clear that more exigent circumstances to justify an arrest were present in *Abney*.

We further note from the record in the instant case that the evidence is at the best conflicting as to whether the police officers announced to the defendant the purpose of their entry into his apartment. A fair analyzation of the evidence strongly supports a finding that such a pronouncement was not made. Our supreme court in the case of *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 166, 370 N.E.2d 1067, made the following observation:

> "By concluding that the United States Supreme Court has not expressly elevated to a constitutional requirement the practice of announcing authority and purpose, we do not mean to devalue its importance. Although the mere failure of police to announce their authority and purpose does not *per se* violate the Constitution, it may influence whether subsequent entry to arrest or search is constitutionally reasonable."

For the reasons stated herein we are of the opinion that the trial court erred in denying the defendant's motion to suppress evidence since the entry of the defendant's dwelling without a warrant was unlawful. Inasmuch as the essential evidence presented at defendant's trial which resulted in conviction came from an unlawful entry, the judgment of guilty entered by the trial court as to the defendant should be reversed and the sentence imposed thereon is vacated.

Judgment reversed.

STENGEL, P. J., and ALLOY, J., concur.