**COMMONWEALTH of Pennsylvania,
Appellant,**

v.

**Karen Lee RICHTER, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 20, 2001.
Filed Jan. 11, 2002.

Stephen B. Harris, Asst. Dist. Atty., Doylestown, for Commonwealth, appellant.

Lawrence E. Brinkmann, Doylestown, for appellee.

Before DEL SOLE, President Judge, CAVANAUGH, JOHNSON, HUDOCK, JOYCE, STEVENS, MUSMANNO, ORIE MELVIN, and LALLY–GREEN, JJ.

STEVENS, J.

¶ 1 This is an appeal by the Commonwealth from an order entered in the Court of Common Pleas of Bucks County granting Appellee Karen Lee Richter's motion to suppress the physical evidence seized by the police. On appeal, the Com-monwealth alleges that the warrantless, unannounced entry of the police into Appellee Richter's residence was warranted by exigent circumstances and the "knock and announce" rule was not violated.[1] We reverse and remand for further proceedings.

Our scope of review when considering the Commonwealth's appeal of a suppression order is narrow:

[W]e must consider only the evidence of the...[defendant's] witnesses and so much of the evidence for the prosecution, as read in the context of the record as a whole, remains uncontradicted. If the evidence supports the factual findings of the trial court, we are bound by such findings, and we may reverse only if the legal conclusions drawn therefrom are in error.

Thus, to determine the propriety of the court's order in this case, we must discern whether the court's findings are supported by the evidence adduced at the suppression hearing and, if so, whether the court concluded correctly [that officers improperly entered and seized illegal narcotics and drug paraphernalia from the residence at issue].

*Commonwealth v. Beasley,* 761 A.2d 621, 624 (Pa.Super.2000) (citation and quotation omitted).

¶ 2 The record reveals the following: At approximately 9:20 p.m. on May 19, 2000, Police Officer Christopher J. Forbes, Police Officer Thomas, and Sergeant J.R. Landis were on-duty in Buckingham Township when they received a 911 call indicating that a domestic dispute was in progress and that a female was holding a male in a residence at gunpoint. N.T. 8/22/00 at 3–4, 10. The trio proceeded to

---

1. The Commonwealth has properly certified in its notice of appeal that the suppression order will terminate or substantially handicap the prosecution. *See Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985); Pa. R.A.P. 311(d).

the address given, 1939 Route 413 in Buckingham, and approached the door. Without knocking and announcing his identity, Sergeant Landis opened the door, which was unlocked, and Arthur Nicholas Gosin was found standing in the kitchen. N.T. 8/22/00 at 14, 17–18. Sergeant Landis ordered Gosin to remain standing, and Officers Forbes and Thomas proceeded into the residence. N.T. 8/22/00 at 15. Officer Forbes patted down Gosin for weapons, and the remaining officers proceeded to the bedroom where Appellee Richter was located.[2] N.T. 8/22/00 at 5. Sergeant Landis asked Appellee Richter what had happened, and she indicated that Gosin assaulted her. N.T. 8/22/00 at 15. Sergeant Landis went back to the front of the residence to talk to Gosin and discovered a marijuana roach on a coffee table. N.T. 8/22/00 at 15.

¶ 3 Gosin was arrested in relation to the assault, and he was read his *Miranda* warnings. N.T. 8/22/00 at 7. Sergeant Landis requested consent to search the residence, and Gosin consented to the search. N.T. 8/22/00 at 7. Sergeant Landis searched the premises and found drug paraphernalia, including a ceramic pipe and a bong, and a baggie of marijuana in the dresser and entertainment center. N.T. 8/22/00 at 17.

¶ 4 Appellee Richter was arrested, charged with possession of marijuana and drug paraphernalia, and filed a pre-trial motion seeking to suppress, *inter alia*, the physical evidence seized by the police. In her motion, Appellee Richter alleged that the evidence should have been suppressed because the police entered and searched the premises at issue without a warrant, probable cause, consent, or exigent circumstances. Following a hearing on the matter,[3] the suppression court granted Appellee Richter's motion to suppress, indicating that the knock and announce rule was violated and the police did not have exigent circumstances to make a warrantless entry into the residence. The Commonwealth filed a timely appeal to this Court, and the matter was originally assigned to a three-judge panel of this Court for disposition; however, this Court *sua sponte* referred this case for *en banc* review.[4]

■ ¶ 5 On appeal, the Commonwealth contends that the suppression court erred in granting Appellee Richter's motion to suppress, in which Appellee Richter contended that the police did not have a warrant, probable cause, consent, or exigent circumstances to enter and search the premises at issue.

■ ¶ 6 Art. I, Sec. 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution protect against unreasonable searches and seizures. The expectation of privacy protected against the United States and Pennsylvania Constitutions has been held to be greatest in one's home. *See Commonwealth v. Gutierrez*, 750 A.2d 906 (Pa.Super.2000). A warrantless search of a residence is *per se* unreasonable unless justified by a specific exception to the warrant requirement. *Id.*

The exigent circumstances exception to the warrant requirement recognizes

---

**2.** Mr. Gosin leased the residence in question, and Appellee Richter lived with him. N.T. 8/22/00 at 5.

**3.** Gosin filed a suppression motion, and a hearing was held with regard thereto. The parties and the court agreed to use the notes of testimony from Gosin's hearing in deciding Appellee Richter's motion to suppress.

**4.** The trial court did not order the Commonwealth to file a statement pursuant to Pa. R.A.P.1925(b), and no such statement was filed. However, the trial court filed an opinion.

that some situations present a compelling need for instant arrest, and that delay to seek a warrant will endanger life, limb or overriding law enforcement interests. In these cases, our strong preference for use of a warrant must give way to an urgent need for immediate action.

In determining whether exigent circumstances exist, a number of factors are to be considered. Among the factors to be considered are: (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is a strong reason to believe that the suspect is within the premises to be searched, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling.

*Commonwealth v. Santiago*, 736 A.2d 624, 631–632 (Pa.Super.1999) (quotations omitted).

■ ¶ 7 Applying the said factors to the case *sub judice*, we conclude that the entry by police into the subject premises was proper. First, the crime at issue was one of violence. *See Id.* That is, the police were investigating a domestic dispute where one person was reportedly holding another as a hostage at gunpoint. Second, the police reasonably believed that someone inside the house was armed. This conclusion is based on the fact that the police received a 911 call indicating that a gun was being used. Third, there was sufficient probable cause indicating that a violent domestic dispute, involving someone being held at gunpoint, was in progress. For example, the caller identified the address, people, and activity in detail, and, merely because there was no activity outside the house upon the police officers' arrival, it does not necessarily follow that no probable cause existed. Fourth, there was a strong reason to believe that an armed suspect was within the premises entered. The 911 call at issue specifically provided the police with the address where the domestic dispute was occurring, and that someone was being held at gunpoint. Fifth, there was a likelihood that the suspect would escape if not swiftly apprehended. It was reasonable for the police to believe that a person who held another at gunpoint would flee from the scene or hold the victim as a hostage. Sixth, the entry by the police was peaceable. Sergeant Landis testified that he opened the unlocked front door and entered the premises with no confrontation by the occupants. Moreover, Sergeant Landis and Police Officer Forbes indicated that there were no confrontations while they searched the premises. "The fact that [the] entry was not forcible aids in showing the reasonableness of police attitude and conduct." *Santiago*, 736 A.2d at 632 (quotation and quotation marks omitted). Seventh, the time of the entry was made during the early evening hours, at 9:20 p.m. Although it was presumably dark when the entry was made, the police responded immediately to the call and, the fact it was dark, "underscores the delay (and perhaps the impracticability of) obtaining a warrant, and hence serve to justify proceeding without one." *Id.* (quotation and quotation marks omitted).

¶ 8 With regard to the other factors which may also be taken into account, we conclude that there was a great danger to police and other persons due to Appellee Richter's presence within the dwelling. For example, the police received a report that Appellee Richter was holding Gosin at gunpoint. If the police were required to wait for a warrant in order to enter the residence, the possibility of a "stand off" or an armed suspect escaping into the neighborhood was a threat. Here, the domestic dispute involving the use of weapons necessitates a finding of exigent circumstances. As such, based on all of the aforementioned, we conclude that exigent circumstances existed permitting the police to enter 1939 Route 413 in Buckingham.

▇▇▇▇ ¶ 9 The Commonwealth next argues that the trial court erred in suppressing the evidence because the knock and announce rule was not violated in this case. We find that Appellee Richter has waived any contention with regard thereto.

¶ 10 We have carefully reviewed Appellee Richter's motion to suppress and conclude that a knock and announce issue was not raised therein. Although testimony was elicited about the police officers' failure to knock and announce during Gosin's suppression hearing, which was incorporated into Appellee Richter's case, we find that the issue has been waived because Appellee Richter failed to raise it in her suppression motion. *See Commonwealth v. Whiting*, 767 A.2d 1083 (Pa.Super.2001)

(holding that failure to include issue in suppression motion results in waiver of issue). As such, any violation of the knock and announce rule can not provide a basis for the trial court's suppression of the evidence against Appellee Richter.

▇▇▇▇ ¶ 11 Moreover, assuming, *arguendo,* that the issue was preserved because Appellee Richter incorporated Gosin's notes of testimony, which specifically raised the knock and announce issue, we conclude that it is meritless. The knock and announce rule concerns police conduct in the execution of search warrants and requires police to "give notice of [their] identity, authority, and purpose... [prior to entering] the premises specified in the warrant, unless exigent circumstances requires [their] immediate forcible entry." *Commonwealth v. Piner*, 767 A.2d 1057, 1059 (Pa.Super.2000) (citing Pa.R.Crim.P. 2007). The rule has no application to the within case in which there was no search warrant and in which the police entered the residence at issue without a warrant under exigent circumstances.

¶ 12 For all of the foregoing reasons, we reverse the suppression court's order granting Appellee Richter's motion to suppress, and we remand for further proceedings.[5]

¶ 13 Reversed; Remanded; Jurisdiction relinquished.

¶ 14 JOHNSON, J., files a dissenting opinion in which DEL SOLE, President Judge, joins.

---

5. We note that, in her suppression motion, Appellee Richter not only challenged the police officers' entry into the residence at issue, but she also challenged the seizure of the evidence, alleging that the police officers did not have consent to search once they were inside the house. However, the alleged lack of consent issue has been waived since Appellee Richter indicated during the November 27, 2000 hearing that she was raising the issues raised at Gosin's suppression hearing only. N.T. 11/27/00 at 4–6. The issue of consent was not raised during Gosin's hearing. In any event, it is clear that the marijuana roach was found in plain view while the officers were properly investigating the domestic dispute. As for the seizure of the ceramic pipe, bong, and baggie of marijuana found in the entertainment center, we conclude the items were found pursuant to a legal, consensual search.

JOHNSON, J., Dissenting.

¶ 1 I respectfully dissent. The Majority concludes that the suppression court erred in granting Karen Lee Richter's motion to suppress drug evidence. The Majority concludes that exigent circumstances existed that justified the officers' warrantless intrusion into Richter's home. Following review of the circumstances at the moment of the intrusion, and applying prevailing case law on the matter, I conclude that the officers failed to demonstrate the exigency of the situation which would justify their entry into Richter's residence. Accordingly, I conclude that the trial court properly suppressed the drug evidence obtained as a result of the illegal intrusion.

¶ 2 On May 19, 2000, at approximately 9:30 p.m., Officers Forbes and Thomas, and Sergeant J.R. Landis of the Buckingham Township Police Department were on patrol when dispatch issued a message that a 911 call had been placed. The caller indicated that a couple was involved in a domestic dispute and a female was holding the male resident at gunpoint. The officers arrived to find the neighborhood quiet. Without knocking, Sergeant Landis opened the door and entered. Upon entry, the officers found Arthur Nicholas Gosin standing in the kitchen. Sergeant Landis ordered Gosin to stay where was, while Officers Forbes and Thomas proceeded into the residence. Officers Forbes and Thomas then discovered Richter in the bedroom. Richter indicated that Gosin had assaulted her. As Sergeant Landis re-approached Gosin in the kitchen, he saw a marijuana roach lying on a coffee table. The officers then arrested Gosin for the assault and gave him *Miranda* warnings. Thereafter, Sergeant Landis obtained Gosin's consent to search the premises. As a result of his search, Sergeant Landis found drug paraphernalia and a bag of marijuana. The officers then arrested Richter.

¶ 3 The Commonwealth charged Richter with possession of a controlled substance and drug paraphernalia. In her pre-trial motion, Richter sought the suppression of the drug evidence on the grounds that the officers did not have a warrant, probable cause, consent or exigent circumstances permitting the entrance into the residence. Because Gosin also filed a pre-trial motion seeking the suppression of evidence, the parties agreed to permit the court to use the notes of testimony produced during Gosin's pre-trial hearing to decide the merits of Richter's motion. The court granted Richter's motion on the basis that the police violated the "knock and announce" rule and because exigent circumstance did not exist to justify their intrusion. The Commonwealth subsequently filed separate appeals from the court's orders granting both Gosin's and Richter's motion to suppress the drug evidence. On June 27, 2001, a panel from this Court reviewed the Commonwealth's appeal regarding the trial court's order granting Gosin's motion. The Majority rejected the Commonwealth's assertion that exigent circumstances existed justifying the intrusion. *See Commonwealth v. Gosin*, 779 A.2d 1217 (Pa.Super.2001) (unpublished memorandum). The Majority on this appeal concludes that the trial court erred in failing to find exigent circumstances.

¶ 4 The Commonwealth presents the following issue for this Court's consideration:

Did the trial court err in granting [Richter's] motion to suppress physical evidence where the warrantless, unannounced police entry into [Richter's] residence was justified by the existence of exigent circumstances?

Brief for Appellant at 3.

¶ 5 While I observe that the Majority attempts to dispose of a question of whether the officers violated the "knock and announce" rule, this question is immaterial

to the disposition of the issue as presented by the Commonwealth in its Statement of the Question Presented. Therefore, I shall limit my discussion to whether exigent circumstances existed to justify the officers' entrance into Richter's home.

¶ 6 In addressing an appeal from an order granting suppression of evidence, our scope of review is limited to an analysis of the suppression court's findings of fact and conclusions of law. *See Commonwealth v. Mendenhall*, 552 Pa. 484, 715 A.2d 1117, 1118 (1998). In reviewing the findings of a suppression court where the Commonwealth is appealing, this Court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *See Commonwealth v. Chase*, 394 Pa.Super. 168, 575 A.2d 574, 575 (1990). The suppression court's findings of fact bind an appellate court if the record supports those findings. *See Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879, 881 (1998). "The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts." *Id.* As a result, this Court may reverse **only if the legal conclusions drawn from the factual finding are erroneous**. *See Commonwealth v. Stewart*, 740 A.2d 712, 715 (Pa.Super.1999). Moreover, this Court "will affirm the decision of the suppression court if it can be sustained for any reason whatsoever, even if the court offered an erroneous reason to support its action." *Commonwealth v. Govens*, 429 Pa.Super. 464, 632 A.2d 1316, 1320 (1993).

¶ 7 The Commonwealth contends that exigent circumstances existed at the time of the intrusion that justified the officers' warrantless entry. Brief for Appellant at 9. The Commonwealth argues that a report of a domestic disturbance involving a

gun necessitated the officers' entry into Richter's home. Brief for Appellant at 11. Moreover, the Commonwealth argues that the subsequent search of Richter's home was the result of a properly obtained consent. Brief for Appellant at 12.

¶ 8 The Fourth Amendment protects individuals from unreasonable governmental intrusions into their legitimate expectation of privacy. *See Commonwealth v. Gutierrez*, 750 A.2d 906, 909 (Pa.Super.2000). The expectation of privacy protected under the Fourth Amendment has been held to be greatest in one's home. *See id.* Indeed, the United States Supreme Court has long recognized that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. *See id.* (quoting *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). Furthermore, a warrantless search of a residence is *per se* unreasonable unless justified by a specific exception to the warrant requirement. *See id.*

¶ 9 In reviewing the exigent circumstances exception to the warrant requirement, this Court has recognized that "some situations present a compelling need for instant arrest, and that delay to seek a warrant will endanger life, limb, or overriding law enforcement interests. In these cases, our strong preference for use of a warrant must give way to an urgent need for immediate action." *Govens*, 632 A.2d at 1324. However, "[a]ll decisions made pursuant to the exigent circumstances exception [to the warrant requirement] must be made cautiously, for it is an exception which by its nature can very easily swallow the rule unless applied in only restricted circumstances." *Id.* (quoting *Commonwealth v. Conn*, 377 Pa.Super. 442, 547 A.2d 768, 770 (1988)).

¶ 10 "Before agents of the government may invade the sanctity of the home, the

burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Commonwealth v. Santiago,* 736 A.2d 624, 631 (Pa.Super.1999), *appeal denied,* 561 Pa. 674, 749 A.2d 470 (2000). In determining whether exigent circumstances exist, a number of factors are to be considered. *See Commonwealth v. Roland,* 535 Pa. 595, 637 A.2d 269, 270 (1994). Among the factors to be considered are: (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is·strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. *See id.* at 270–71. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified. *See id.* at 271. Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling. *See id.* "Nevertheless, 'police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.'" *Id.* (quoting *Welsh v. Wisconsin,* 466 U.S. 740, 749–50, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)).

¶ 11 At the outset, I would concede that at the time the officers received the dispatched call, the gravity of the offense reported, ostensibly domestic abuse at gunpoint, was severe and that the anonymous call was sufficient to provide a reasonable belief that someone had a gun. The court found, however, that the officers did not encounter any disturbance emanating from Richter's residence prior to entering. Thus, the only information the officers had regarding the circumstances within Richter's home, contemporaneous to the intrusion, was an anonymous tip that a woman was holding a man at gunpoint.

¶ 12 This Court has previously held that an anonymous tip, standing alone, is insufficient to support a finding of probable cause where police officers attempt to obtain a search warrant. *See Commonwealth v. Rosario,* 320 Pa.Super. 215, 467 A.2d 5, 9 (1983). Where the intrusion is the warrantless entry into the home, a *clear* showing of probable cause must be made. *See Roland,* 637 A.2d at 270. Thus, absent any information, corroborative or independent, which would bolster the veracity of the tip, an anonymous tip is not sufficient to provide a clear showing of probable cause. Consequently, because the police failed to corroborate the information provided in the 911 call with anything they had observed, I would conclude that they failed to make a clear showing of probable cause.

¶ 13 Similarly, the Commonwealth did not adduce *any* testimony that the officers, upon their arrival, saw anyone inside of Richter's home. Again, the only information at the officers' disposal was the tip provided in the 911 call. When balanced against the absence of activity upon their arrival, I would conclude further that there was no *strong* reason to believe that anyone was at Richter's residence when the police opened the door.

¶ 14 The fifth factor (whether there is a likelihood that the suspect will escape if not swiftly apprehended) presumes the presence of an identifiable suspect known to police prior to entry. Logically, this is the case because one is incapable of discerning the likelihood of a suspect's escape when it is uncertain that a suspect capable

of escape exists. At the moment the officers crossed the threshold of Richter's home, they did not have a strong reason to believe that a suspect was in the house. Thus, it would be untenable for the officers to assess the flight risk of an, as yet unknown, suspect. Consequently, this factor does not enter into the present matter.

¶ 15 While I concede that the testimony demonstrates that the entry was peaceable, it occurred at approximately 9:20 p.m. Our Supreme Court has expressed repeatedly its concern regarding the reasonableness of nighttime searches. *See Roland,* 637 A.2d at 271; *Commonwealth v. Williams,* 483 Pa. 293, 396 A.2d 1177, 1180 (1978). *See also Jones v. U.S.,* 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958) (concluding "it is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home"). Thus, I conclude that the late hour of the officers' entry diminishes the significance that their entrance was made peaceably.

¶ 16 The Majority's position would permit officers to enter private residences with no more than an anonymous tip of someone wielding a weapon. Such a position would certainly allow the exception "to swallow the rule." *Conn,* 547 A.2d at 770. Viewing the evidence with the purpose and limitations of the exigent circumstance exception in mind, I conclude that the Commonwealth failed to demonstrate a compelling need for instant arrest thereby justifying the intrusion into Richter's home. *See Govens,* 632 A.2d at 1324.

¶ 17 Because the plain view exception to the warrant requirement applies only when the police observe evidence from a place in which they are entitled to be, *see Commonwealth v. Gutierrez,* 750 A.2d 906, 910 (Pa.Super.2000), and the officers in this case were not, in my opinion, so entitled, the drug evidence discovered on the kitchen table should have been suppressed. Likewise, Gosin's consent "will not justify the otherwise illegal search unless the Commonwealth can demonstrate that [his] consent was an independent act of free will and not the product of the illegal detention." *Commonwealth v. Freeman,* 563 Pa. 82, 757 A.2d 903, 909 (2000) (quoting *Florida v. Royer,* 460 U.S. 491, 501, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). However, because of the temporal proximity between the detention and the consent for the search and the lack of any intervening circumstances, which would demonstrate that the consent was an act of free will, it is impossible for the Commonwealth to demonstrate that Gosin's consent was not the product of the detention. *See id.* I would therefore conclude that because Gosin's consent is invalid, the fruits of the consequent search should have been suppressed. Accordingly, I would affirm the court's order suppressing drug evidence obtained as a consequence of the unconstitutional intrusion into Richter's home. For the foregoing reasons, I respectfully dissent.